IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY.

### NOVEMBER TERM, 1866.

---

### REBECCA F. ROGERS v. REUBEN POTTER.

1. When a husband dies seized of lands in which his widow is entitled to dower, and pending an application by her to the Orphans' Court for an assignment of dower, a party enters upon the premises and cuts down valuable trees growing thereon, she may maintain an action of trespass on the case for damages committed, before dower is assigned.
2. The widow, in seeking her remedy, is not confined to her writ of dower *unde nihil habet.*

---

Action on the case, and demurrer to plea.

The declaration in this case, set forth in substance, that James D. Rogers, the husband of the plaintiff, died seized of certain real estate, situate in the county of Ocean, upon which were growing a large number of valuable trees; that the plaintiff was the lawful wife of said Rogers, who is now deceased, and that, as his widow, she is entitled to dower in said premises; that the defendant, after the death of her husband, entered upon said premises and cut down a considerable part of said trees, to her damage; that before the committing of said grievances, the plaintiff had applied

78

to the Orphans Court of the county of Ocean, to have her dower assigned, and that, after the cutting down of said trees, this was done; the premises injured being the portion assigned to her.

The action was, in form, trespass on the case. The defendant, among other pleas, pleaded *liberum tenementum,* which was demurred to.

The demurrer was argued before the CHIEF JUSTICE, and Justices ELMER, HAINES and BEDLE.

For the plaintiff, *Messrs. Slaight & Lewis.*

For the defendant, *F. J. Speer.*

The opinion of the court was delivered by

BEASLEY, C. J. The plea which has provoked a demurrer in this case is so obviously bad, that it will be passed without further notice, the only question in the case worthy of consideration being, whether the declaration discloses any legal ground of action.

The proposition upon which the sustainability of this suit depends is, that in case a husband die seized of dowable lands in this state, his widow can maintain an action on the case against any person entering upon and doing damage to such lands, between the death of the husband and the assignment of her dower.

Regarding this problem in the light of general principles, and as a matter to be settled upon considerations of convenience and justice, we are led, I think, irresistibly to the conclusion that the right of action in this form should be maintained. It is not denied that an act has been done which injuriously affects the interests of the dowress. The only question which has been, or which can be raised, is the narrow and altogether technical one, whether, in seeking compensation for such loss, she is confined to her remedy by

the writ of *unde nihil habet*, or can resort, as a separate proceeding, to the present form of action.

The view which denies to the widow the right of redress in the mode adopted in this case will, if sanctioned, leave the law in a state of evident imperfection; for there will be some instances, not of infrequent occurrence, in which a dowress, for any invasion of her rights, will be remediless. For example: suppose, after the death of her husband, a stranger enter upon the land and waste it, and the heir-at-law be insolvent; as her writ for dower must proceed against the latter, her claim for damages, if a mere adjunct to such suit, would be practically, of no value. So again: by force of the statute of this state, either the heir-at-law or the dowress can apply to the Orphans Court to have dower assigned; and, in this method, no compensation can be awarded to the widow, either for the detention of her dower or for waste committed upon the estate. It is, therefore, obvious, that if the recovery of damages is incident only to the suit at law for dower, such recovery can be in all cases frustrated by the initiation of proceedings in the Orphans Court by the owner of the land. The language of this statute is, that " it shall be lawful for any widow entitled to dower in any lands or real estate of which her husband died seized, or for any heir or heirs, or guardian of any minor child or children, entitled to any estate in the said lands or real estate, or for any purchaser thereof, to apply by petition to the Orphans Court, &c.; whereupon the said court shall appoint three discreet and disinterested freeholders in the said county, commissioners to admeasure and set off," &c. From this quotation, it manifestly appears that the Orphans Court, in proceedings to assign dower, has a concurrent jurisdiction with the other tribunals, and, therefore, when that jurisdiction has attached, it is difficult to perceive how, upon ordinary principles, it is to be defeated. The admitted rule of law is, that in case of co-ordinate judicatures, it is priority of cognizance alone which gives a paramount right to retain and decide the case. By the petition of the heir or his

alienee, the Orphans Court would undoubtedly be clothed with an authority to adjudicate finally, in the manner marked out in the statute, on the subject of the setting off of the dower. Upon what ground, then, could that power be divested by the institution of proceedings tending to the same end, by the widow, in another court? To such second suit, a plea in abatement of the pendency of the prior proceedings would seem to interpose an insurmountable obstacle. And even if we should suppose that the Orphans Court would, in some cases, where damages were claimed, by a questionable stretch of its authority, dismiss the proceedings commenced by the owner of the property, in order to afford the widow an opportunity to institute her suit in another forum, it is not to be overlooked that this is to convert the widow's claim for damages, which is strictly a legal right, into a matter of favor or grace, altogether dependent upon judicial discretion. To say the least, the right of the widow, in connection with proceedings under this statute, would sometimes be in jeopardy. It is not to be denied, therefore, that if the principle of this suit can be sustained, it will be an important, if not a necessary auxiliary to the effectual execution of the provisions of the statute in question.

Nor are the evils above suggested the only ones which are inherent in the doctrine that the only remedy for damages done to the interests of the dowress belongs, as an inseparable part, to the action of *unde nihil habet.* Many others could be adduced; the two following, however, will suffice to show incontestably how impotent the law would be, on the hypothesis of the defence, to protect the just claims of the widow, and which claims, the books tell us, are so highly favored. Thus, if the heir commit waste, and then convey away the premises; or in case of a term for years, created before coverture, and unexpired at the death of the husband, the lessee, after such death, destroy the property; in each of such events the widow would be remediless, for the action *unde nihil habet* must be brought against the tenant of the freehold, and consequently would not lie against the lessee

of a term of years, in possession, nor against the heir after
his alienation. If the defendant is correct in his contention,
then, in each of these cases, the widow would sustain a
wrong for which there would be no redress; a result which,
of itself, is well calculated to give rise to doubts as to the
conformity of such contention with established legal princi-
ples. And in this connection it is to be borne in mind that
it is the mere form of action, and not the right of the widow
to compensation for the damages which have been inflicted,
which is in dispute; for it is admitted on all sides that if
dowable lands are injured by the wilful act of the heir or
his alienee, after the death of the ancestor, the dowress
can, at law, compel the wrong-doer to make good such loss.
The text writers, and the decisions, both ancient and mod-
ern, are all agreed upon this subject. Thus, Roper, refer-
ring to the rule that the widow must bear her proportion of
the loss incident to any natural depreciation of the estate
after the death of the husband, says, "in such event, she can
claim nothing from the heir in respect of such decrease, ex-
cept it was occasioned by his own voluntary misconduct;
and in that case she would be entitled to compensation in
damages." 1 *Roper Hus. & W.* 346. And to the same pur-
pose see 1 *Bright H. & W.* 385; *Park. on Dow.* 256; 1
*Washb. R. P.* 251; *Plowd. Qu.* 46; 14 *H.* 4, 33; *Harker* v.
*Christy,* 2 *South.* 717.

Such being the incontestable right of the dowress, upon
what principle is it that it can be claimed that she cannot
enforce such right, except in connection with her suit for
dower? In any attempt to answer this inquiry, it should
be noted that there is no analogy between the right to dam-
ages for the detention of dower, and those recoverable for
waste committed, the claim to the former being the creature
of statute; the claim to the latter being an incident of the
estate of the dowress. According to the rules of the com-
mon law, however long a widow was kept out of the enjoy-
ment of her dower, the loss thus occasioned, she was obliged
to bear; and this was upon the feudal principle, that as the

heir, at the death of the ancestor, was compelled to discharge the obligations and submit to the servitudes annexed to the land, he should, as an equivalent, take the profits until the widow's share was actually assigned to her. To remove or alleviate this hardship, the statute of Merton was passed; and this is the sole authority by force of which damages for the temporary deprivation of dower are awarded. But the slightest examination of this act will satisfy any one that it makes no provision whatever for any detriment to the widow, by reason of the wilful deterioration of the land. Upon this subject the words of the statute are perfectly clear and unambiguous. After referring to widows who cannot have their dowers without plea, the act declares that "they that be convict of such wrongful deforcement shall yield damages to the same widows; that is to say, the value of the whole dower to them belonging from the death of their husbands unto the day the said widows, by judgment of our court, have recovered seizin of their dower," &c. The relief here provided was simply compensatory for the loss of the use of the land; that is, one third of the annual profits of the estate from the death of the husband, and, in addition, a reasonable allowance for the inconvenience and detriment of being postponed in the perception of such profits. *Martin v. Martin*, 2 *Green* 130; *Walker & Nevil's case*, 1 *Leon.* 56. Whether the damages thus given can be so separated from the dower itself as to form the basis of a separate suit, is a subject it is not necessary, on the present occasion, to discuss, because such an inquiry has no affinity to the question under consideration. The only ground, it is presumed, on which it could be argued that the damages for the detention of dower must be recovered in the suit for dower, would be from the general scope, or the particular expressions of the statute of Merton; but as that act does not, in any degree whatever, relate to the recovery of compensation for waste, its construction in the above particular, becomes wholly unimportant for present purposes. Laying this statute, then, out of the question, the inquiry recurs with augmented force,

upon what argument can it be insisted that the remedy for waste must of necessity be regarded as an accompaniment to the action for dower? Unlike the cause of action for the detention of dower, which owes its existence entirely to the statute of Merton, this right to indemnification for wilful injuries done to the land, is founded in general principles, and arises from the essential nature and qualities of the estate of the dowress.

It is true that the situation of the widow, with regard to the land before dower assigned, is altogether anomalous. It is clear that she cannot, at this stage of her rights, enter upon the estate nor maintain ejectment; nor can her interest be seized on execution; nor can she transfer it at law, except by release to the *terre tenant*, by way of extinguishment. In short, in view of these incapacities, it is sometimes said that this interest of the widow is a mere chose in action. But then, it is to be remembered, that after the assignment of her dower, her seizin relates back to the death of her husband, and that thenceforth the antecedent seizin of the heir, which took effect on the death of the husband, is superseded and considered as never having had an existence. Nor does the widow take the estate from the heir or his alienee, but she is in by appointment of law. Possessed of a perfect title, then, to her share of the lands, and with a seizin which, when obtained, extends back, in contemplation of law, to the moment of the inception of such title, it is certainly not to be wondered at that the law has always declared that for any injurious invasion of such interest, the dowress was entitled to enforce, by a proceeding in court, compensation from the wrong-doer.

How, then, under such conditions, can it be maintained that this remedy for a violation of a right of this character is but an appendage to the action for dower? Such a doctrine certainly has no foundation in legal analogies. Nor can it be said to be established by any course of precedents; for after a careful examination, I have not found a single instance in which damages for waste have been incorporated

Rogers v. Potter.

in the result of the proceedings to recover dower. That such damages might be claimed without incongruity in such suit is obvious, and that recoveries have been had in such form is highly probable; but there is clearly no settled course of practice to that effect. Indeed, the entire absence, in cases of this character, of examples of the procedure at common law is easily explained by the well-known fact that the remedy for injuries to the estate of the widow is almost universally sought in a court of equity, as in the recent case of *Bishop* v. *Bishop*, 13 *L. J. N. S. Chan.* 302, in which it was held that the widow, before the assignment of her dower, had such an interest in the timber which had been cut down by the heir, that she was entitled for life to one-third of the produce, the money having been paid into court. It can, therefore, be safely affirmed that the action in the present case, is not opposed to an established or long continued usage. In point of form, it is in harmony with the modes of proceeding in analogous cases; I am not aware that in any of its applications it is liable to be misapplied or abused; and in some instances, before referred to, it appears to be necessary to a complete dispensation of justice in the courts of common law. On these grounds, I think the use of the action should be sanctioned.

The subject above discussed appears to have received but little judicial attention. But I find no case in antagonism, in any degree, with the view above expressed, while in *Sellman* v. *Bowen*, 8 *Gill. & Johns.* 50, the notion of the inseparability of the damages for the detention of dower from the action for the dower was the point of the case, and was expressly disallowed, the widow being permitted to recover in equity her damages, after an assignment of her dower by suit at law.

Justices HAINES and BEDLE concurred.

CITED in *Jacobus* v. *Mutual Benefit Life Insurance Co.*, 12 C. E. Gr. 608.

ELMER, J., dissenting. The widow's right of dower, until it is legally assigned, is a right of action only. Upon the death of the husband, the freehold is cast immediately on the heir, and although she has a right to remain in, hold and enjoy the mansion-house and messuage or plantation thereto belonging, until her dower is assigned to her in all the real estate of which her husband was seized during the coverture, to which she has not relinquished her right, without paying any rent, until such assignment is made, she has no estate in any other part of the real estate, and no right of entry. *Nix. Dig.* 227 ;* *Dyer* 343 ; *Plowd.* 529 ; 1 *Cruise, ch. IV.,* § 1.

For the purpose of protecting her right against the acts of her husband, her title, when the assignment is made, is held to relate back to the time of the marriage, and her seizin becomes that of the husband ; but as even the heir cannot maintain trespass until he has entered, neither can the widow, and as she has no estate in the land, the law gives her no right of action for any injury done to it before her right accrues. At the common law, she had no remedy to recover damages for the detention of her dower. By the ancient statute, called the statute of Merton, enacted in England, in the reign of Henry III., it was provided, that in the action of dower, *unde nihil habet,* she might recover damages for the value of her dower, from the time of the death of her husband, if he died seized ; and this statute has been re-enacted and enlarged in this state, so that it is held now that she may also recover such damages, from the death of the husband, if he died seized, without any previous demand, and from the time of such demand, if he did not die seized. *Hopper* v. *Hopper,* 2 *Zab.* 715.

Whether, besides the annual value of the dower, she may, in the action, also recover damages for waste done to the land after her husband's death, seems to have been questioned and never formally decided. *Plowd. Quer.* 46. Upon principle, however, I think she undoubtedly has this right. It was held in the case of *Walker* v. *Nevil,* 1 *Leon.*

---

* *Rev., p.* 320.

56, that the jury in this action may assess damages beyond the revenue, for she may have sustained more. Actions of dower have fallen into disuse in England, resort there being usually had to the Court of Chancery. In the recent case of *Bishop* v. *Bishop*, 13 *L. J. N. S. Chan.* 302, it was held in that court that the widow, before the assignment of her dower, had such an interest in the timber which had been cut down by the heir, that she was entitled for life to one third of the produce, the money having been paid into court. This decision was in accordance with the law as previously stated by the text writers. 1 *Roper H. & W.* 346 ; *Park. on Dower* 256 ; and see 1 *Washb. R. Prop.* 251.

It has been suggested that the provisions of our act, authorizing dower to be set off by commissioners appointed by the Orphans Court, make it necessary to protect the widow by allowing such an action as the present. In my opinion, if this was so, the remedy should be afforded by appropriate legislation, and not by the judicial sanction of an unprecedented action. I am not able, however, to perceive that she needs any other remedy than that open to her by her action of dower, as prescribed by our statute. In the case before us, it appears that she, herself, applied to the Orphans Court; but whether the waste complained of was committed before or after this application, does not appear. If before, the difficulty of obtaining redress was occasioned by her own mistake in not resorting to her action at law. If the waste was committed between the time of her application and the confirmation, by the Orphans Court, of the report of the commissioners, she should have objected to the confirmation, for the plain reason that an assignment of wasted land did not do her justice. It is the duty of the heir, or his assignee, to set off the dower ; and although either party may apply to the Orphans Court to appoint commissioners to do it, and their assignment, when confirmed, becomes binding, these proceedings are not in the nature of an action any more than similar proceedings to partition land, and are not binding until confirmed ; and if the confirmation be appealed from, until it is sanctioned by the Prerogative Court. In a

case where the heir or a purchaser gives notice to the widow of an intended application to the Orphans Court, there is nothing in the letter or the spirit of the act which takes away her right to commence her action at law at the expiration of forty days from the death of her husband, and the fact that she has done so will be a sufficient reason to prevent any further action by the Orphans Court. If the dower is not, in point of fact, assigned to her at the expiration of the forty days, she is deforced of her dower, and her right to commence her action of dower, *unde nihil habet*, becomes complete; and even if it be admitted that the court in which such an action is commenced will, in the exercise of its power to control actions improperly commenced, stay any further proceedings, upon being informed of the appointment of commissioners by the Orphans Court, which must be considered to admit of great doubt, they certainly would not do so if it appeared that there was any danger that the widow would thereby suffer any damage.

In my opinion, the declaration in this case discloses no legal ground of action, and therefore our judgment upon this demurrer must be for the defendant.